**Sheldon BARR, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Philip T. White, R. Timothy Slattery, Robert Abrams, Orestes J. Mihaly, Mark A. Tepper and Rebecca Mullane, Defendants.**

**No. 86 C 2447.**

United States District Court,
E.D. New York.

Oct. 15, 1986.

Howard L. Jacobs (Sheldon Barr, pro se., of counsel), New York City, for plaintiff.

Andrew J. Maloney, U.S. Atty. (David M. Nocenti, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., Robert Abrams, Atty. Gen., State of N.Y. (Richard G. Liskov and August L. Fietkau, Asst. Attys. Gen., of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action against the United States Department of Justice and two of its officials (collectively the Department of Justice) and New York State Attorney General Robert Abrams and two of his assistants (collectively the State Attorney General), seeking an injunction as well as damages, both compensatory and punitive.

Plaintiff asserts that the Department of Justice, at the behest of the State Attorney General, improperly requested the Swiss government to freeze, and that government in response to the request froze, certain Swiss bank accounts controlled by plaintiff. He claims that defendants have thus made an unlawful seizure of his property and have deprived him of it without due process, all in violation of the Fourth and Fifth Amendments to the United States Constitution. He asserts that he will be irreparably damaged by the freeze and moves for a preliminary injunction directing defendants to ask Switzerland to release the funds.

On April 29, 1986 a New York State grand jury returned an indictment signed by the State Attorney General charging plaintiff and others with conspiracy, a scheme to defraud, and grand larceny. The next day the State Attorney General asked the Department of Justice to send to the government of Switzerland a request to freeze bank accounts controlled by plaintiff. The Department of Justice did so, purportedly under the Treaty with the Swiss Confederation on Mutual Assistance in Criminal Matters, May 25, 1973, 27 U.S.T. 2019, T.I.A.S. No 8302 ("the Treaty").

The request asked the Swiss for, among other things, records of bank accounts controlled by plaintiff and a "freezing order" on them to protect the rights of victims of a fraud. The request detailed plaintiff's and others' suspected involvement from 1981 to 1986 in a "fraudulent leasing scheme," described transactions indicating he had transferred fraudulently obtained funds to Swiss accounts, and set forth the New York State Penal Code provisions making plaintiff's acts crimes. Echoing the indictment, the request stated that the scheme had "deprived 695 persons of $13 million" and added that plaintiff had obtained and converted more than $3 million, which he transferred to Swiss accounts.

The date when the Swiss applied the freeze is unclear, and plaintiff says he received no formal notice of it from either

government but learned of it only through his private bank. However, he filed objections with the Swiss on June 5, 1986, June 30, 1986 and July 22, 1986.

In response to plaintiff's objections the Swiss Federal Police Administration Bureau issued an order dated July 24, 1986 denying plaintiff's objections and giving reasons for doing so. In substance, the reasons were that plaintiff lacked capacity to object because he had not shown that the freeze would impair his defense in the United States or that there was any violation of Swiss law. The order added that in any event the facts showed that the acts, if they had been committed in Switzerland, would have established a case of fraud under Swiss law. The acts described thus met the requirements of the Treaty that the request set forth the elements of an offense punishable under the law of the requested state. The order concluded that plaintiff had a right to appeal, which he informed this court he has done.

Plaintiff contends that (1) the Treaty does not authorize the freeze, (2) even if the Treaty did so, the freeze is unconstitutional because he received no adequate notice and hearing, (3) the State Attorney General had no authority to prosecute plaintiff or to ask the Department of Justice to request the freeze, and (4) the freeze irreparably harms plaintiff, and he is thus entitled to a preliminary injunction.

■ Under the Treaty the United States and Switzerland "undertake to afford" each other "mutual assistance" in, among other things, investigations and court proceedings "in respect of" criminal prosecutions within the jurisdiction of the respective parties, provided that there exists in the requesting state a reasonable suspicion that acts have been committed that constitute the elements of the alleged crime. Article 1, sections 1(a) and 2. The assistance is to include, "but not be limited to," among other things, "effecting the production or preservation of judicial documents, records, or articles of evidence." Article 1, section 4.

The two governments have acted in a manner they believe to be authorized by the Treaty, and their interpretation is certainly plausible. Plaintiff contends that the assistance contemplated by the Treaty does not include a freeze but is limited to obtaining evidence and the like. This argument is inconsistent with the language of Article 1, subsection 4, stating that the assistance is "not limited to" such matters. Switzerland by legislation implementing the Treaty has authorized its appropriate officials, on their own or at the request of the United States, to take "precautionary measures to preserve the existing situation" or to act to "safeguard threatened legal interests." Article 8, Swiss Federal Law on the Treaty. This is a practical and reasonable construction of its terms.

But in any event by Article 37, section 1 of the Treaty its restrictions afford no right to private persons to obtain judicial relief except as to matters not here relevant. Nor does the Treaty provide that the only way the two countries may lend assistance to each other is pursuant to the Treaty. Switzerland and the United States are sovereign powers. Irrespective of any treaty both may make and accede to such requests as they see fit. Plaintiff's rights stem not from the Treaty but from the Constitution of the United States.

Plaintiff's constitutional claim, insofar as it depends on the argument that the State Attorney General had no authority to prosecute him and obtain the indictment, has no merit. This same argument, which hardly rises to a federal constitutional level and appears to be frivolous in the light of section 358 of the New York General Business Law, was rejected by Judge Sayah in *People v. Barr*, No. 5NO71972 (N.Y.Crim.Ct. October 15, 1985).

■ Assuming for the sake of argument that acts of United States officials set in motion a seizure of plaintiff's property in violation of plaintiff's rights under the Fourth and Fifth Amendments, the court must consider whether to vindicate those rights by injunction against the executive branch. To issue an injunction would be to

interfere in the executive's conduct of foreign relations with Switzerland. The court may not routinely apply the traditional standards applicable to preliminary injunctions where the effect would be to intrude into this area. *Sampson v. Murray*, 415 U.S. 61, 83–84, 94 S.Ct. 937, 949–50, 39 L.Ed.2d 166 (1974). As the court said in *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir.1978), a court is hardly "in a position to exercise a judgment that is fully sensitive" to this country's interests in international relations, which is so dependent on matters of practical interaction and symbolic significance. *Id.* at 955. Thus a plaintiff seeking an order directing government officials to take action in foreign affairs can succeed only if he makes "an extraordinarily strong showing." *Id.*

In the *Adams* case the Inupiat Eskimos asked the District Court to direct the Secretary of State to file an objection to a decision of the International Whaling Commission banning Eskimo hunting of the bowhead whale subject to objection by the United States. The Secretary decided not to object, and the District Court ordered him to do so. In vacating this order, the Court of Appeals assumed that if the case had been an ordinary one and if the balance of equitable factors had favored an injunction that would merely preserve the status quo, injunctive relief would be proper. *Id.* at 956.

The District Court in ordering the filing of the objection found that it would not harm the United States because it could be withdrawn. However, the Court of Appeals pointed out that "the symbolic impact" of the United States being the first nation to object to the Whaling Commission's action could be grave. *Id.* The court further decided that while the ban on whaling might cause irreparable injury to the Eskimos that injury was "by no means certain." *Id.* at 957.

The symbolic significance of the order sought in this case and in the *Adams* case may differ in magnitude. But the principle is the same. This court cannot ignore the potential harm that issuance of the order asked here would have on United States' relations with Switzerland and with other nations with similar treaties. Stability of foreign relations must in some measure depend on reasonable assurance that the respective executives have domestic authority to act.

Moreover, here plaintiff has by no means shown that he is certain to suffer irreparable damages. *Loveridge v. Pendelton Woolen Mills, Inc.*, 788 F.2d 914 (2d Cir. 1986). He wishes to retain expensive counsel to defend him in his criminal case. But he has not demonstrated that he has no means to retain less expensive but perhaps equally effective counsel or that the New York State court, if he is unable to afford counsel, will appoint incompetent counsel. *Cf. United States v. Marshall*, 526 F.2d 1349, 1355 (9th Cir.1976).

Plaintiff has not made an extraordinary showing sufficient to justify an injunction against government officials in their conduct of foreign relations.

The court need not decide if plaintiff has standing to seek an injunction directing the Department of Justice to request the Swiss to release the accounts. *Cf. Cardenas v. Smith*, 733 F.2d 909, 914 (D.C.Cir.1984).

Preliminary injunction denied. So ordered.