RECON/OPTICAL, INC.,
Plaintiff-Appellant,

v.

GOVERNMENT OF ISRAEL,
Defendant-Appellee.

No. 438, Docket 86–7745.

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1986.
Decided April 17, 1987.

Frank J. Costello, Washington, D.C. (Ralph L. Kissick, Charles J. Simpson, Jr., Zuckert, Scoutt, Rasenberger & Johnson, Washington, D.C., Nathan J. Bayer, Freehill, Hogan & Mahar, New York City, of counsel), for plaintiff-appellant.

Jeffrey A. Fillman, New York City (Morris A. Wirth, Roland L. Trope, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, MANSFIELD,* and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Recon/Optical, Inc. ("Recon") appeals from Judge Griesa's denial of its application for a preliminary injunction. Recon sought to prevent the Government of Israel ("Israel") from drawing $21.5 million against a letter of credit pending arbitration of the parties' contractual disputes. Because we conclude that Recon has no chance of success on the merits, we affirm.

BACKGROUND

The dispute concerns a contract entered into by Recon and the Israeli Ministry of Defense, Mission to the United States (the "Mission"), in October 1984 for the development and production of a unique aerial reconnaissance system for the Israeli Air Force ("IAF"). The parties' differences arose over the contract's specifications for the "flight envelope," the range of aircraft speeds and altitudes at which the aerial reconnaissance camera would operate, aeronautical technology that need only be mentioned and not understood for purposes of this opinion. By mid–1985, it was clear that the system could not be completed in accordance with the contract specifications. The exact source of this problem is a subject of dispute between the parties. According to Recon, it is the result of Israel's insistence on specifications that are unrealistic and unreasonable. Israel maintains,

however, that it had allowed potential contractors to provide their own specifications if they believed them necessary and that Recon's own mistaken estimations are at fault.

In October 1985, Recon proposed various specification modifications to enable it to perform under the contract. This proposal apparently was made to, and orally approved by, the IAF. Whether the IAF had authority under the contract to bind Israel to this proposal is in dispute. Thus, while Recon had made millions of dollars in changes by April 1986, Israel denied having ordered them and refused payment.

To ensure completion of the project, Israel urged Recon to submit its claims to arbitration under Article 18, which required that all disputes relating to the contract be resolved by arbitration. Recon did submit the claims to arbitration on May 9, 1986, but announced simultaneously that it was "terminating" the contract under Article 17.1, which allowed an aggrieved party to terminate in the event of a material breach. Recon justified its termination on the grounds that, *inter alia*, Israel had refused to pay for the changes and had been late in paying certain invoices. Israel filed an answer and a counterclaim in the arbitration proceeding, reiterating that it had not agreed to pay the cost of the contract changes.

Pursuant to its "termination" of the contract, Recon refused to continue work on the project. Asserting this work stoppage as grounds, Israel on June 2, 1986, gave Recon a 30–day notice of its intent to draw under a letter of credit that Recon had furnished under Article 4.3. Article 4.3 required Recon to obtain the letter of credit in order to receive advance payments under the contract. Accordingly, Recon obtained an irrevocable standby letter of credit in favor of Israel from the Security Pacific National Bank of California in the principal amount of $33,292,000.[1] The letter of cred-

---

* Judge Mansfield participated in the oral argument in this case and voted before his death on January 7, 1987, in favor of the disposition reached in this opinion.

1. *Consistent with Article 4.3 of the contract, the* letter of credit provided for payment by Security Pacific National Bank upon Israel's presentation of a sight draft and "A CERTIFICATION

it was guaranteed by Recon's parent corporation, Bourns, Inc. The contract allowed Israel to draw against the letter of credit in any amount not exceeding its advance payments if it certified to the bank that it was "entitled" to such amount because of: "(i) non-delivery by Seller of a deliverable item hereunder in accordance herewith or (ii) other material breach by Seller of its obligations hereunder." [2]

Requiring military contractors to furnish a letter of credit was a longstanding practice of the Mission. Prior to the instant case, the Mission had attempted to draw under such a letter of credit only once, in connection with a contract with Sperry International Trade, Inc. ("Sperry") for the design and construction of a ground-to-ground communication system for the IAF. After a dispute arose over contract performance, Sperry initiated arbitration proceedings, ceased all work on the project, and instituted suit in the Southern District of New York to enjoin Israel from drawing on the letter of credit pending a decision by the arbitrators. The district court issued an injunction, but we reversed on the ground that Sperry had made no showing of irreparable injury. *Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8 (2d Cir.1982). At an expedited arbitration proceeding, the arbitration panel ordered that the proceeds of the letter of credit be held in an escrow account in the joint names of Sperry and Israel pending a decision on the merits. *See Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301 (2d Cir.1982) (affirming order confirming preliminary arbitration award). The arbitrators determined that Sperry had to pay Israel $16.4 million, return to Israel or destroy certain "protected material," and bear various bank charges. This award was upheld in *Sperry Int'l Trade,*

*Inc. v. Government of Israel*, 602 F.Supp. 1440 (S.D.N.Y.1985). Israel was thus prevented from recovering any of its payments to Sperry for the 39 months from the time work ceased on the contract to the time the $16.4 million was paid.

In an attempt to strengthen its hand in the event of a similar future dispute, Israel added certain provisions to its standard form contract. To discourage future contractors from stopping work in the event of arbitration, as Sperry had done, Israel added the following language at Article 18.6 of the Recon contract:

> Unless otherwise directed by Buyer, pending the final disposition of any dispute hereunder, Seller agrees to proceed diligently with the performance of this Contract, or any change thereto in accordance with the decision and instructions of the Buyer, provided that Buyer shall pay Seller the amount due in accordance with this Contract, subject to adjustment based on the final disposition of the dispute.

Further, to avoid again being forced to litigate its right to draw under a letter of credit pending an arbitration decision, Israel added clauses at Article 4.3, providing that the contractor would not institute any action seeking to enjoin a drawdown, and at Article 18.1, providing that the arbitrators have no authority over an attempted drawdown.

Israel deemed Recon's work stoppage a material breach in violation of Article 18.6, entitling it to draw down the letter of credit by as much as $21.5 million, the total payments made to Recon by Israel. Recon then commenced the instant suit to enjoin the drawdown. At a hearing on September 3, 1986, Judge Griesa denied Recon's preliminary injunction request. He found that Recon had terminated its performance un-

SIGNED BY THE DIRECTOR OF THE NEW YORK MISSION OF MINISTRY OF DEFENSE, GOVERNMENT OF ISRAEL STATING THAT, BY REASON OF NON–DELIVERY OF A DELIVERABLE ITEM OR OTHER MATERIAL BREACH, RECON/OPTICAL, INC. HAS FAILED TO PERFORM UNDER ITS OBLIGATIONS UNDER CONTRACT NO. 700/26232/A101–151."

2. Because the entire project was funded by the United States government through the Defense Department's Defense Security Assistance Agency ("DSAA"), any funds drawn under the letter of credit must be paid to the United States Treasury for the account of Israel, not to Israel directly. The funds will then become available for future use by Israel for DSAA-financed procurements in the United States.

der the contract because of a financial dispute with Israel. Further, he found that the financial dispute and the right to terminate were to be resolved through arbitration. Reasoning that Recon was bound under Article 18.6 to continue work pending arbitration and had failed to do so, Judge Griesa held that Recon had committed a material breach entitling Israel to draw down the letter of credit under Article 4.3. This appeal followed.

## DISCUSSION

█ Under our well-established standard for determining whether to grant the extraordinary remedy of a preliminary injunction, the moving party must establish irreparable harm and either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *E.g., In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). On appeal, review is limited to determining whether the district court abused its discretion in denying a preliminary injunction. *E.g., Arthur Guinness & Sons v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir.1984). Because Recon has failed to show either a likelihood of success or serious questions going to the merits, we affirm.

With regard to the merits of enjoining the drawdown, Recon contends principally that (1) the contract did not require it to continue performance under Article 18.6, (2) performance is impossible and therefore not required, and (3) the drawdown should not be allowed because of fraud in the transaction.

█ On the contract interpretation issue, Recon argues that the district court's conclusion that Article 18.6 required Recon to continue work pending arbitration essentially reads Article 17.1, authorizing either party to terminate because of the other's material breach, out of the contract. As a means of "harmonizing" Articles 18.6 and 17.1, Recon proposes that Article 18.6 should apply only in the event of a non-material breach or a material breach by Israel as to which Recon declines to exercise its termination right. That view ignores the language and plain sense of the contract, however. Article 18.6 explicitly requires continuation of work "pending the final disposition of any dispute." A provision applicable only to non-material breaches would be superfluous, because Recon's obligation to continue performance would not be legally diminished by such a breach even absent the clause. *See* J. Calamari and J. Perillo, *Contracts* § 11–22(a) (2d ed. 1977); A. Corbin, *Corbin on Contracts* § 946 (1951 & Supp.1971). In addition, Article 18.1 designates arbitration as the exclusive forum for "[a]ll claims between the parties hereto based upon any alleged breach of any of the substantive obligations created hereunder." Plainly, the "disposition of any dispute" contemplated by Article 18.6 is arbitration, and Recon is therefore required to continue work pending the arbitration that it has initiated.[3] Should the arbitrators find a material breach by Israel, Recon may then terminate under Article 17.1.

█ We note that we need not reach the question of the validity of Article 4.3, which bars Recon from seeking injunctive relief against a drawdown under the letter of credit. Article 18.1 unambiguously separates drawdown rights from arbitration proceedings by depriving the arbitrators of any power over a drawdown of the letter of credit. This allows Israel to determine unilaterally for purposes of a drawdown that a material breach has occurred and to certify that determination to the bank. The clear

---

**3.** Recon also claims that it was not obligated to continue performance because Article 18.6 conditions this duty on Israel's payment of amounts due under the contract. However, the condition that Recon refers to does not require Israel to make disputed payments; rather, it merely obligates Israel to pay for Recon's continuing performance. *See* Article 18.6. The district court properly left to the arbitrators the determination of whether Israel had breached the contract by failing to pay certain invoices.

purpose of the letter of credit provisions, as evidenced by the changes in the standard contract after the *Sperry* case, is to allow Israel to have immediate access to funds necessary to secure procurement from a second source if performance under the initial procurement contract ceases, rather than to have to wait, as it did in the Sperry matter, for the resultant disputes to be finally resolved.

Recon next argues that it was not obligated to continue work due to the impossibility of performance. *See, e.g.,* N.Y.U. C.C. Law § 2–615 (McKinney 1964) (excusing seller's non-delivery where "performance as agreed has been made impracticable"); Restatement (Second) of Contracts § 266(1) (1981). However, we have no reason to disturb the district court's factual finding, based in part on the testimony of Recon's chief financial adviser, that Recon terminated the contract not because of impossibility of performance or any other reason listed in its termination letter, but because of its arbitrable dispute with Israel concerning payment for the modifications. Indeed, Recon conceded that it could continue with production under those specifications but for the cost. The district court properly left for the arbitrators the determination of which party must bear the costs of the modifications.

In its final argument on the merits, Recon claims that the drawdown must be enjoined as a matter of law under New York's "fraud in the transaction" doctrine.[4] *See* N.Y.U.C.C. Law § 5–114(2)(b) (McKinney 1964). This doctrine is an exception to the general rule that a letter of credit is independent of the underlying obligation it secures, *Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583, 588 (2d Cir. 1983); *Harris Corp. v. National Iranian Radio and Television,* 691 F.2d 1344, 1354–55 (11th Cir.1982), and allows a court to enjoin payment under a letter of credit where a drawdown would amount to an "outright fraudulent practice" by the beneficiary. *Rockwell,* 719 F.2d at 589 (quoting *United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 261, 392 N.Y. S.2d 265, 271, 360 N.E.2d 943, 949 (1976)).

In *Rockwell,* we stated that "the 'fraud' inheres in first causing the default and then attempting to reap the benefit of the guarantee." *Id.* at 589. In that case, the government of Iran had prevented Rockwell from performing under the contract and then sought to draw against a letter of credit based on that non-performance. No such circumstances exist here. Although the parties dispute the responsibility for the original specifications and increased costs due to modifications, Israel has sought only to have these disputes resolved by the arbitrators as provided in the contract. Whether or not its view of the merits of these disputes is correct, there is no evidence that Israel has acted in bad faith or impeded Recon's continued performance. Far from constituting fraud, a drawdown by Israel under the circumstances is entirely consistent with the parties' contractual intent.

The district court's conclusion that Recon had no basis for challenging Israel's drawdown thus adequately disposed of Recon's request for relief and obviated the need for any factual finding with regard to irreparable harm.

Affirmed.

---

4. The letter of credit is by its terms subject to the Uniform Customs and Practice for Documentary Credits ("UCP"). Although the UCP does not explicitly provide for a "fraud in the transaction" defense, our cases have recognized that New York law makes this defense available under the UCP. *See Rockwell Int'l Systems, Inc.*

*v. Citibank, N.A.,* 719 F.2d 583, 588 (2d Cir. 1983); *KMW Int'l v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 15 n. 3 (2d Cir.1979) (citing *United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 258 n. 2, 392 N.Y.S.2d 265, 269 n. 2, 360 N.E.2d 943, 947 n. 2 (1976)).