**PALESTINE INFORMATION OFFICE,**
**et al., Plaintiffs,**

**v.**

**George P. SHULTZ, et al., Defendants.**

**Civ. A. No. 87–3085.**

United States District Court,
District of Columbia.

Dec. 2, 1987.

As Corrected Dec. 2 and Dec. 3, 1987.

Steven R. Shapiro, John A. Powell, Helen Hershkoff, New York City, Arthur B. Spitzer, Elizabeth Symonds, Hope Nakamura, American Civ. Liberties Union Foundation, Washington, D.C., for plaintiffs.

Sharon L. Reich, David J. Anderson, Vincent M. Garvey, Dept. of Justice, and on brief, Richard K. Willard, Asst. Atty. Gen., and Joseph E. di Genova, U.S. Atty., Washington, D.C., for defendants.

Daniel J. Popeo, Paul D. Kamenar, Washington, D.C., for amici curiae representatives Jack Kemp, Tom Bliley, Dan Burton, D.E. "Buz" Lukens, Raymond J. McGrath, Elton Gallegly, Jack Fields, George C. Wortley, Tom Lewis, Jack Davis, Joe Skeen, Bill Schuette, Don Sundquist; Senators Charles E. Grassley, Alphonse D'Amato, Jesse Helms; Richard L. Stethem, Patricia Stethem, Sheryl Stethem, and the Washington Legal Foundation.

Gary S. Marx, Evan J. Krame, Phil Baum and Marc D. Stern, Boston, Mass., for amicus curiae American Jewish Congress.

TABLE OF CONTENTS

| | | Page |
| --- | --- | --- |
| I. | INTRODUCTION | 914 |
| II. | FACTUAL BACKGROUND OF THE CASE | 914 |
| III. | POSTURE OF THE CASE | 915 |
| IV. | ISSUES PRESENTED | 916 |

A. The Secretary of State's Determination that the PIO Constituted a "Foreign Mission", "Mission," or "Entity" of the PLO Was Proper Under the Foreign Missions Act ... 916

 1. The Secretary of State Is Afforded Wide Latitude in the Conduct of Foreign Affairs and the Plaintiffs Have Failed to Carry Their Heavy Burden of Proof in Seeking Injunctive Relief in this Case ... 916

 2. The PLO Is a "Political Entity" and the PIO Is an "Entity" for Purposes of Designating the PIO a "Foreign Mission" Pursuant to 22 U.S.C. § 4302(a)(4)(B) ... 916

 3. The PIO Is Engaged in "Other Activities" on Behalf of the PLO within the Meaning of 22 U.S.C. § 4302(a)(4) ... 917

B. Having Found that the Secretary's Determination that the PIO Is a "Foreign Mission" Representing the PIO Was Proper, the

**914**

Court Concludes that the Plaintiffs' Constitutional Claims, on the Facts Here, Do Not Rise to the Level Necessary to Implicate First Amendment Concerns ... 918

C. The Secretary's Decision to Close the PIO as a "Foreign Mission" of the PLO Does Not Violate Plaintiffs' Due Process Rights ... 919

V. CONCLUSION ... 919

---

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

■ This matter comes before the Court as a result of a decision by the Secretary of State to order the closing of the Palestine Information Office ("PIO") of the Palestine Liberation Organization ("PLO") in Washington, D.C., pursuant to the Foreign Missions Act ("FMA"), 22 U.S.C. §§ 4301, *et seq.*, because it is a "foreign mission." It is undisputed that the PIO engages in political activity and political propaganda in the United States as an agent of the PLO. *See* Exhibit 1 to Rahman Declaration. For foreign policy reasons, the Secretary of State has determined that the PLO is not welcome in the United States and that the PIO must cease operations as an "entity."

At the outset, the Court makes clear that it is not passing on the wisdom of such a foreign policy decision because "matters relating 'to the conduct of foreign relations ... are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *Regan v. Wald,* 468 U.S. 222, 242, 104 S.Ct. 3026, 3038, 82 L.Ed.2d 171 (1984), *quoting Harisiades v. Shaughnessy,* 342 U.S. 580, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952). The question for the Court to decide is whether the Secretary of State acted lawfully in determining, pursuant to the Foreign Missions Act, that the PIO is a foreign mission of the PLO. If the Secretary of State did act constitutionally and lawfully in pursuit of the government's legitimate interest in conducting foreign policy, his action must be upheld.

For the reasons set forth in this Opinion, the Court finds that the Secretary of State acted lawfully in determining that the PIO is a "foreign mission" of the PLO. Similar-ly, the Court finds that the Secretary's action was fully in consonance with the Constitution. As Chief Justice Warren held in *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), when "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important governmental interest can justify regulating the nonspeech conduct. This is precisely what has here occurred.

## II. FACTUAL BACKGROUND OF THE CASE

The PIO is a registered agent of the PLO under the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 611–621. Complaint ¶ 12; *see also* Exhibit 1 (Plaintiffs' FARA statement) to Rahman Declaration. So is the PIO's director, a naturalized U.S. citizen, Hasan Abdel Rahman. Complaint ¶ 12; Rahman Declaration ¶ 5; Exhibit 1 to Rahman Declaration. The PIO has been operating since 1978. Rahman Declaration ¶ 2. The annual budget of the PIO is approximately $350,000. Rahman Declaration ¶ 8. This budget is largely paid for by the Palestine National Fund, which plaintiffs identified to the Court at a status conference held November 25, 1987 as the finance department of the PLO. Rahman Declaration ¶ 8. According to its FARA statement, the PIO operates exclusively on behalf of the PLO. *See* Exhibit 1 to Rahman Declaration.

As late as May 13, 1987, the State Department was of the view that the PIO, identified at the time as the "PLO Information Office," "neither reflects nor requires the approval of the United States Government." Letter from James A. McVerry, Political Officer in the Office of Jordan, Lebanon and Syrian Affairs, Department of State, to Robert Clarke, Director of

Government Affairs, National Association of Arab–Americans; Exhibit 2 to Rahman Declaration. This letter went on to say that "so long as that office regularly files reports with the Department of Justice on its activities as an agent of a foreign organization, *complies with all other relevant U.S. laws*, and is staffed by Americans or legal resident aliens, it is entitled to operate under the protection provided by the First Amendment of the Constitution." *Id.* (emphasis added). This letter was written with obvious reference to the FARA, not the FMA here involved. Nevertheless, the FMA is *another relevant U.S. law* with which the PIO must comply, and the State Department said nothing less in May, 1987.

Approximately four months later, the PIO received a letter from Ambassador James E. Nolan, Jr., Director of the Office of Foreign Missions at the Department of State, informing that Deputy Secretary of State John C. Whitehead had designated the PIO a "foreign mission" of the PLO pursuant to 22 U.S.C. § 4302(a)(4)(B).[1] The Deputy Secretary determined that the PIO met the criteria of a "foreign mission" as defined in the Foreign Missions Act. In addition, and acting pursuant to a delegation of authority from the President under Article II of the Constitution to conduct this country's foreign affairs to the Secretary of State, the PIO was ordered to cease operating as a foreign mission of the PLO. *See* Letter from Ambassador James E. Nolan, Jr. to the PIO dated September 15, 1987; Exhibit A to Plaintiffs' Complaint. The Department of State further determined that the PIO "(1) must divest itself of all real property under 22 U.S.C. § 4305(b); (2) must acquire and dispose of all benefits as defined by 22 U.S.C. § 4302(a) and as designated by the Department, through the Office of Foreign Missions; and (3) must discontinue use and dispose of all such benefits." *Id.*

The designation of the PIO as a "foreign mission" of the PLO was published in the Federal Register. 52 Fed.Reg. 37035 (October 2, 1987). *See* Exhibit B to Plaintiffs' Complaint. The PIO was at first given 30 days to cease operating as a foreign mission to the PLO, but was subsequently given until December 1, 1987 to comply with the State Department's order. Pursuant to this Court's request during a status conference held November 25, 1987, the Department of State agreed to extend the order until 11:59 p.m., December 3, 1987 in light of the fact that this matter had to be reassigned to this Court at the last minute.

### III. POSTURE OF THE CASE

On November 13, 1987, plaintiffs filed a complaint seeking declaratory and injunctive relief and at the same time filed a motion for preliminary injunction. Plaintiffs' allege several infirmities regarding the Secretary of State's designation of the PIO as a "foreign mission," "mission," or "entity" of the PLO and decision to order the PIO to cease operating as a "foreign mission" of the PLO. Specifically, the PIO contends that the defendants have exceeded their statutory authority under or acted contrary to the Foreign Missions Act, that the order violates plaintiffs' rights to freedom of speech and association, that the Foreign Missions Act, as applied, is unconstitutionally vague, and that the failure to provide adequate procedures through which plaintiffs can challenge defendants' decision violates their due process rights under the Constitution.

Defendants disagree with these allegations and view the case not as an attack on anyone's constitutional rights, but rather as a legitimate exercise of the Executive's constitutional responsibility to conduct foreign affairs. Defendants have repeated that the basis for the order was not to stifle speech or associational rights, but to

---

1. 22 U.S.C. § 4302(a)(4)(B) provides, in part: (4) *"foreign mission" means any mission* to *or agency or entity in the United States which is involved in* the diplomatic, consular, or *other activities of,* or which is substantially owned or effectively controlled by—

\* \* \* \* \* \*

(B) *an organization ... representing a territory or political entity* which has been granted diplomatic or other privileges and immunities under the laws of the United States *or which engages in some aspect of the conduct of the international affairs of such territory or political entity....* (emphasis added).

close down a particular foreign mission. *See* Exhibit 1 to Complaint.

At the status conference held November 25, 1987, the parties tentatively agreed to the Court's suggestion that plaintiffs' motion for a preliminary injunction be consolidated with the merits pursuant to Fed.R. Civ.P. 65(a)(2). At the status conference, the parties also tentatively agreed that this matter could be considered under Rules 12 and 56 of the Federal Rules of Civil Procedure as if the parties presented cross-motions for summary judgment. Such a decision on the merits could save two appeals and spare the litigants, as well as the Court, additional expense. On further consideration, the defendants filed a statement of material facts not in dispute on November 27, 1987. These facts were drawn from plaintiffs' pleadings and declarations. Plaintiffs also filed a statement of material facts not in dispute on the same day. Although they disagreed with defendants' facts, plaintiffs did not withdraw any facts stated in their pleadings or declarations which the Court accepts as true in connection with this Opinion.

This Opinion shall constitute the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) to the extent the same is considered requisite for plaintiffs' request for injunctive relief. In any event, after a thorough and considered view of all the papers submitted by the parties, the Court concludes that, in light of the undisputed facts set forth in plaintiffs' pleadings, defendants are entitled to judgment as a matter of law.

### IV. ISSUES PRESENTED

A. *The Secretary of State's Determination that the PIO Constituted a "Foreign Mission," "Mission," or "Entity" of the PLO Was Proper Under the Foreign Missions Act*

1. *The Secretary of State Is Afforded Wide Latitude in the Conduct of Foreign Affairs and the Plaintiffs Have Failed to Carry Their Heavy Burden of Proof in Seeking Injunctive Relief in this Case*

■ The Court notes that Congress specifically committed to the Secretary's discretion determinations with respect to the meaning and applicability of the terms used in the definitions section of the Foreign Missions Act. *See* 22 U.S.C. § 4302(b). The reason for such broad discretion is obvious: Congress recognizes that legislation cannot foresee the myriad of contingencies that arise in the context of foreign affairs. *See, e.g., Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965) ("Congress—in giving the Executive authority over matters of foreign affairs—must of necessity paint with a brush broader than that it customarily wields in domestic areas."). The fact that plaintiffs disagree with the Secretary's decision cannot concern the Court, which *may not* inquire into the substantive elements of that decision. *See, e.g., Harisiades v. Shaughnessy*, 342 U.S. 580, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952) (Matters of foreign relations largely immune from judicial scrutiny.).

Therefore, the Court is concerned only with whether the Secretary's exercise of discretion was proper under the Foreign Missions Act, not the substantive elements of his decision. In order to uphold the Secretary's determination that the PIO is a "foreign mission" representing the PLO, the Court must find that the PLO is an "organization representing a political entity," that the PIO is an "entity" for purposes of the Foreign Missions Act, and that the PIO is engaged in "other activities" on behalf of the PLO *or* is "effectively owned or substantially controlled by" the PLO. *See* 22 U.S.C. § 4302(a)(4)(B). Upon review of the facts presented by plaintiffs, the Court concludes that the Secretary's determination that the PIO is a "foreign mission" representing the PLO is consistent with the Foreign Missions Act and the Administrative Procedures Act.

2. *The PLO Is a "Political Entity" and the PIO Is an "Entity" for Purposes of Designating the PIO a "Foreign Mission" Pursuant to 22 U.S.C. § 4302(a)(4)(B)*

■ It has been admitted in plaintiffs' FARA statement that the PIO acts as an agent in the United States for the PLO. The PLO is an organization dedicated to

ends involving territorial and political rights, and thus inevitably has the characteristics of a "political entity."

■ Plaintiffs next argue that the PIO is not an "entity" within the meaning of the subsection defining a "foreign mission." Plaintiffs' Memorandum at 11–14. Because the term "entity" is not defined within the statute, plaintiffs urge the Court to look to the legislative history of the Foreign Missions Act. Plaintiffs rely on one line of a Senate Committee Report and a brief passage in a Conference Committee Report to suggest that when Congress amended the Foreign Mission Act in 1986, it only intended to limit foreign missions or entities that might engage in "commercial" activities.

This hypertechnical reading of the statute is clearly incorrect. The term "entity," added in 1986, is an all-inclusive term. Had Congress intended to restrict its meaning, Congress could easily have added the word "commercial" immediately before the word "entity."

■ Courts are obliged to defer to Congress and to apply the plain and ordinary meaning of words, rather than a hypothesis derived from speculation and surmise, when the words themselves are clear. *See I.N.S. v. Cardoza–Fonseca,* —— U.S. ——, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring) (Courts should adhere to the "venerable principle that if the language of the statute is clear, that language must be given effect—at least in the absence of a patent absurdity.").

The statute itself makes clear that the PIO is an "entity" for the purposes of the statutory definition of a "foreign mission." Thus, the next step for the Court is to find whether it was proper for the Secretary to determine that the PIO is engaged in "other activities" on behalf of the PLO.

3. *The PIO Is Engaged in "Other Activities" on Behalf of the PLO within the Meaning of 22 U.S.C. § 4302(a)(4)*

■ The PIO is clearly engaged in "other activities" on behalf of the PLO that support the determination made by the Secretary that the PIO is a "foreign mission"

of the PLO. The PIO candidly listed political activities and political propaganda that it undertakes for the exclusive benefit of the PLO in its April, 1987 Foreign Agents Registration Act statement. *See* Exhibit 1 to Rahman Declaration. The Court finds that these admissions support the Secretary's determination that the PIO engages in "other activities" that support the determination by the Secretary that the PIO is a "foreign mission" of the PLO.

■ The Court's finding that the entity PIO engages in "other activities" on the political entity PLO's behalf is sufficient to support its decision that the action challenged by the plaintiffs comported with both the Foreign Missions Act and the Administrative Procedure Act. The Court need not consider plaintiffs' challenge to the statutory language, and the application of the statutory language, permitting the Secretary to designate the PIO a "foreign mission" if it is "substantially owned or effectively controlled by" the PLO. Rather, that status may be properly applied if the entity is "involved in the diplomatic, consular, or other activities of, *or* which is substantially owned or effectively controlled by" an organization such as the PLO. *See* 22 U.S.C. § 4302(a)(4) (emphasis added). Written in the disjunctive, the statute does not make ownership or control a condition precedent to a proper determination of "foreign mission" status. Because the Court has determined that the PIO engages in "other activities" on behalf of the PLO and because it finds that the Secretary's decision was procedurally proper, it need not reach any issues relating to portions of the statute not relevant to this determination.

■ Moreover, by seeking injunctive relief against the Executive's foreign policy action, plaintiffs ask this Court to approach the outer limit of its constitutional authority. Chief Justice Rehnquist, writing for the Court in *Regan v. Wald,* 468 U.S. 222, 242, 104 S.Ct. 3026, 3038, 82 L.Ed.2d 171 (1984), quoted from *Harisiades v. Shaughnessy,* 342 U.S. 580, 589, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952), that "(m)atters related 'to the conduct of foreign relations ... are so exclusively entrusted to the political branches of government as to be largely

immune from judicial inquiry or interference.'" It is not for this Court to step in and second guess the Congress and the Executive. *See Haig v. Agee,* 453 U.S. 280, 292, 101 S.Ct. 2766, 2744, 69 L.Ed.2d 640 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."). Furthermore, "courts cannot replicate the expertise of the Department of State and proceed to take over the Department's functions." *Abourezk v. Reagan,* 785 F.2d 1043, 1070 n. 4 (D.C.Cir.1986) (Bork, J., dissenting).

Plaintiffs' application for injunctive relief "intrudes into the core concerns of the Executive Branch," as Judges Leventhal, Robinson and Wilkey wrote in *Adams v. Vance,* 570 F.2d 950, 954 (D.C.Cir.1977). The Court in *Adams* also said that a court would be "quite wrong in routinely applying ... the traditional standards governing orthodox 'stays,'" relying upon *Sampson v. Murray,* 415 U.S. 61, 83–84, 94 S.Ct. 937, 949–950, 39 L.Ed.2d 166 (1974). The *Adams* court went on to add that in an application for injunctive relief, all of the traditional factors apply as set forth in *Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977), and that in the context of foreign affairs the courts must give special consideration to the action of the Executive Branch in this sensitive area. The Court also held that when the special considerations of foreign affairs are implicated, plaintiffs are required "to make an *exceptionally strong showing* on the relevant factors." 570 F.2d at 956 (emphasis added). Given the facts admitted in the case at bar, the plaintiffs have failed to meet the standard for injunctive relief in this circuit.

B. *Having Found that the Secretary's Determination that the PIO Is a "Foreign Mission" Representing the PLO Was Proper, the Court Concludes that the Plaintiffs' Constitutional Claims, on the Facts Here, Do Not Rise to the Level Necessary to Implicate First Amendment Concerns*

 Plaintiffs' attempt to characterize the action by the Secretary of State here as the regulation of political advocacy or speech within the United States is without merit. The Secretary's order merely prohibits the PIO from operating as a "foreign mission" of the PLO. The order does not "prohibit, edit, or restrain the distribution of advocacy materials in an ostensible effort to protect the public from conversion, confusion, or deceit." *Meese v. Keene,* — U.S. ——, 107 S.Ct. 1862, 1871, 95 L.Ed.2d 415 (1987). There is no burden on protected expression as a result of the designation. *See Lamont v. Postmaster General,* 381 U.S. 301, 305, 85 S.Ct. 1493, 1495, 14 L.Ed.2d 398 (1965).

In short, the plaintiff Rahman is not prevented from doing what he and his associates have been doing since 1978, the year the PIO was founded, provided he complies with all relevant U.S. laws. Ambassador Nolan's letter dated September 15, 1987 informing that the PIO had been designated a "foreign mission" made clear that "(n)othing in the Department's actions with respect to the Palestine Information Office derogates from the constitutionally protected rights of U.S. citizens and permanent residents who are now associated with the Palestine Information Office." Exhibit A to Complaint.

Plaintiffs' constitutional claims fail to put this matter in the proper perspective. In situations where a strong and compelling governmental interest allegedly conflicts with an asserted constitutional right, the Supreme Court has applied a balancing test. In *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed. 2d 672 (1968), the Supreme Court held:

(A) government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

 Since *O'Brien,* courts have held that a compelling governmental interest

will be upheld even where constitutional rights are impinged. *See, e.g., National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 181 (5th Cir.1987) (Fourth Amendment interest); *Finzer v. Barry,* 798 F.2d 1450, 1462 (D.C.Cir.1986) (First Amendment interest), *cert. granted sub nom. Boos v. Barry,* —— U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987). When this test is applied to the facts of this case, it becomes clear that the Secretary's order that the PIO cease operating as a "foreign mission" of the PLO must be upheld. The Secretary determined that the order was necessary to further the foreign policy interests of the United States, and thus was archetypally designed to promote a compelling governmental interest. The order was crafted carefully to ensure that it was content neutral and unrelated to the suppression of free expression. The Constitution is not a suicide pact as the able former Supreme Court Justice Goldberg once said.

The Secretary's order in no way prevents plaintiffs from debating political issues with respect to the PLO. *See Mills v. Alabama,* 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484 (1966). On its face, the Secretary's order was not based on disagreement with the content of the message advocated by the PIO, but rather was an expression "of U.S. concern over terrorism committed and supported by individuals and organizations associated with the PLO, and as an expression of our overall policy condemning terrorism." *See* "Determination and Designation of Benefits," Exhibit A to Complaint. The order does not sever the plaintiffs' connection with the PLO, but rather prohibits the PIO from acting as a "foreign mission" of the PLO. Thus, the Court finds that in applying the *O'Brien* balancing test, the substantial governmental interest in conducting foreign policy overcomes any impingement, assuming *arguendo* that plaintiffs have shown any impingement, of plaintiffs' First Amendment rights.

C. *The Secretary's Decision to Close the PIO as a "Foreign Mission" of the PLO Does Not Violate Plaintiffs' Due Process Rights*

■ Having found that the PIO is a foreign political entity, this Court finds that the PIO has no due process right under our Constitution or Laws. The Supreme Court has held that the word "person" in the context of the due process clause of the Fifth Amendment cannot be expanded to encompass States of the Union. *See South Carolina v. Katzenbach,* 383 U.S. 301, 323, 86 S.Ct. 803, 815, 15 L.Ed.2d 769 (1966). If the States of the Union have no due process rights, then a "foreign mission" *qua* "foreign mission" surely can have none.

■ In addition to the foregoing, the defendants have advised the individual plaintiff, Mr. Rahman, that its order does not apply to him individually and was not taken in contravention of any rights inuring to his benefit under our Constitution. It cannot be gainsaid that the individual plaintiff remains free as a citizen to espouse his political views. Any of Mr. Rahman's due process rights are purely personal. As pointed out by defendants, "if Rahman can invoke rights as an American citizen on behalf of the Palestine Information Office, then any foreign government or entity, recognized or not, could similarly appoint or hire an American citizen solely to take advantage of constitutional guarantees." Defendants' Memorandum in Opposition at 50.

■ Moreover, there is no due process right to continued employment by a foreign entity, and plaintiffs have failed to cite any authority to the contrary. Even if one could find a due process interest that is a protected right of Mr. Rahman's, it would not apply to his benefit because under the due process balancing test established in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Secretary's compelling and substantial interest in the field of foreign affairs outweighs any affected private interests of Mr. Rahman, which he has not shown could be furthered by any additional procedural safeguards.

## V. CONCLUSION

Plaintiffs' claims here involve matters that the Court takes very seriously. It

always has, and it always will. However, in this case, the assertion of such claims is utterly meritless. As previously indicated, this case is nothing more than one of simple statutory construction. Accordingly, the Court, treating the facts relied upon here as set forth in plaintiffs' own papers as true and drawing only reasonable inferences therefrom, will enter Judgment for the defendants and will dismiss this case from the dockets of this Court by separate order herewith. Thus, the plaintiffs' application for declaratory and injunctive relief will be denied.

## ORDER

Upon consideration of plaintiffs' "emergency motion for an injunction pending appeal," the opposition thereto, and finding that the movants have failed to meet their heavy burden of showing entitlement to relief in the way of a stay, and further noting the facts as admitted by them, as set forth in the record and in the Court's Opinion of December 2, 1987, as modified by the Separate Order today, it is, by the Court, this 3rd day of December, 1987.

ORDERED: that plaintiffs' emergency motion for an injunction pending appeal be, and the same is hereby, denied.